**WIGDOR LLP**
ATTORNEYS AND COUNSELORS AT LAW

85 FIFTH AVENUE
NEW YORK, NY 10003
TEL 212.257.6800
FAX 212.257.6845
WWW.WIGDORLAW.COM

**Lawrence M. Pearson**
lpearson@wigdorlaw.com

May 13, 2014

**VIA ECF**

The Honorable Valerie E. Caproni
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

Re: Gary DeDilectis v. Deutsche Bank Securities, Inc., et al., No. 13-Civ-1504 (VEC)

Dear Judge Caproni:

We represent Plaintiff Gary DeDilectis ("Plaintiff") in the above-referenced matter, and write this joint letter on behalf of all parties pursuant to Your Honor's March 19, 2014 Order. We look forward to working with Your Honor on this matter.

1. **BRIEF STATEMENT OF THE NATURE OF THE CASE, PRINCIPAL DEFENSES THERETO, MAJOR LEGAL AND FACTUAL ISSUES THAT ARE MOST IMPORTANT TO RESOLVING THE CASE:**

Plaintiff's Statement of the Case

Plaintiff alleges that he was terminated in retaliation for his protected whistleblowing activity in violation of Section 806 the Sarbanes-Oxley Act of 2002. As a Director of Operations at Deutsche Bank Securities, Inc. and Deutsche Bank Aktiengesellschaft (collectively, "DB" or "Defendants"), Mr. DeDilectis brought to the attention of DB's management numerous violations of federal securities laws and regulations regarding the Bank's operational systems, as well as uncorrected overcharges and false charges to clients and regulatory misconduct that amounted to fraud.

In or around August 2010, Mr. DeDilectis began to discover and raise to his superiors various legal and regulatory violations by DB, including, but not limited to: severe and chronic systems outages (resulting in, for example, customers' fully paid securities unlawfully commingling with DB's proprietary assets); overcharges (including one million dollars in un-refunded U.K. stamp tax overcharges to DB's clients); and other potentially fraudulent and illegal conduct (e.g., preferential tax treatment for "platinum" versus "non-platinum" clients). When Mr. DeDilectis encountered these issues, he escalated his concerns, in some cases raising the same issues multiple times when it became clear they had not been addressed by DB or its management. DB's senior management, however, ignored Mr. DeDilectis's repeated attempts to bring attention to the widespread unlawful






practices in DB's operations. On numerous occasions, senior management let it be known that officials were "not happy with" Mr. DeDilectis for "documenting all these issues in his PowerPoint presentations." Defendants summarily terminated Mr. DeDilectis's employment on or about January 11, 2012, providing no notice or any performance-related explanation. Management's express disapproval of Mr. DeDilectis raising these issues, in addition to other circumstances and actions by Defendants, demonstrate the retaliatory nature of the termination and the pretextual nature of any purportedly legitimate reason proffered by DB.

Defendants' Statement of the Case

Mr. DeDilectis's Equity Operations job duties included identifying, reporting and repairing operations systems issues related to Deutsche Bank's management of stock loan and prime brokerage operations and processing of daily trades. In 2008, as part of a global cost savings initiative, Deutsche Bank built an operations site in Jacksonville, Florida and began transforming systems operations to a global platform with support around the world, including Mumbai, India. Mr. DeDilectis was responsible for helping Deutsche Bank establish a new Jacksonville operations team and subsequently transitioning operations to Mumbai. This he refused to do. As a result, Mr. DeDilectis was terminated for failure to support and lead Deutsche Bank's global objectives, not for reporting systems issues – that was his job.

As set forth more fully in their Answer, Defendants deny the principal allegations of Mr. DeDilectis's complaint. By way of example, Defendants deny the following: that Mr. DeDilectis engaged in any protected activity or conduct; that Defendants knew or suspected that Mr. DeDilectis engaged in any protected activity or conduct; that Mr. DeDilectis suffered any adverse employment action for any inappropriate reason; that Defendants violated any law or regulation; that Mr. DeDilectis has suffered any damages for which Defendants are responsible; and that Mr. DeDilectis is entitled to any relief whatsoever.

In Defendants' view, the most important factual issues in the case are the reasons and support for Mr. DeDilectis's termination. Specifically, Mr. DeDilectis's employment was terminated because he was ineffective at his job. The job duties of Mr. DeDilectis and his Equity Operations team included operating as a failsafe when the technological systems encountered problems and finding solutions for these issues – technological issues which are common in the industry and in no way violated the law. As a high level manager in charge of this team, Mr. DeDilectis was unable to think strategically or contribute effective and innovative solutions. While he was more than willing to point out problems (which was his job), he neglected to articulate viable solutions to remedy the issues. He also failed to support the global objections of the Bank. In his managerial role, Deutsche Bank expected and needed a higher level of strategic thinking and performance. Further, his abrasive style alienated colleagues and impeded operations. As a result, Deutsche Bank needed to upgrade the position. His termination, after his inability to deliver better leadership on these core issues, was completely unrelated to his purported complaints.





**2. BRIEF DESCRIPTION AS TO THE BASIS OF SUBJECT MATTER JURISDICTION AND VENUE:**

Federal question subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1514A, as Mr. DeDilectis's claims involve the federal Sarbanes-Oxley Act of 2002. Venue is proper in this district pursuant to 28 U.S.C. § 1391(a) because the Defendants' regional headquarters offices are located at 60 Wall Street, New York, NY 10005. Defendants do not dispute subject matter jurisdiction or venue.

**3. BRIEF DESCRIPTION OF ANY MOTIONS:**

(i) Motions that have been made and decided

To date, no formal motions have been made.

(ii) Motions that any party seeks to or intends to file

Plaintiff's Intended Motions

Defendants have completely failed to comply with their discovery obligations by unilaterally creating and running a protocol for searching electronically stored information ("ESI") without any input whatsoever from Plaintiff. Plaintiff has repeatedly attempted to compromise and negotiate in good faith over the last several months, but Defendants have refused to respond to or counter Plaintiff's communications and ESI proposals. Plaintiff anticipates submitting a motion to compel Defendants to run Plaintiff's proposed ESI search protocol and produce all relevant, responsive documents yielded by those searches in light of Defendants' delay and refusal to run a mutually agreed upon ESI protocol.

Defendants' unilaterally run search protocol is highly prejudicial to Plaintiff, as it excludes many essential custodians closely involved in the events and conduct underlying Plaintiff's claims. Defendants also inexplicably omitted many obvious and necessary terms, including, *inter alia*, "fir(ing)" (relating to Mr. DeDilectis's termination) or "platinum" (relating to one of the primary allegations in the case involving preferential tax treatment for "platinum" versus "non-platinum" Bank clients). Defendants' protocol also used connectors transparently intended to overly narrow the search terms so they likely would not yield useful results. E.g., "/gary d/ w/25 (perform* or remov* or replac* or terminat*)" – as opposed to using "gary" with related terms; and "((outage* w/15 adp) or (outage* w/5 /root cause/)) and (viking or millennium or magnetar or aqr or bgi or blackrock or vanguard or renaissance or adp or arena or arina or broadridge)" – which narrows the search for discussion of systems outages to an extreme degree. Defendants have refused to run additional searches of anyone's communications on the supposed basis that Plaintiff's proposed protocol includes Mr. DeDilectis's subordinates (which they argue is somehow duplicative), and that the search terms are overbroad. However, Plaintiff sent a revised protocol to the Bank's counsel a month ago (without having received a counterproposal from Defendants) which drops most of Mr. DeDilectis's subordinates. In addition, Plaintiff long ago proposed predictive coding, a cost-efficient alternative to running search terms. Nevertheless, despite the practical sense of Plaintiff's proposal and the obviously complex and document-intensive nature of the instant case, Defendants have repeatedly rejected this ESI collection method without reason or explanation.






Defendants' stonewalling extends even to refusing to run a "hit report" to assess how many documents would be yielded by the various search terms in Plaintiff's proposed protocol.

Defendants' Intended Motions

Defendants intend to oppose Plaintiff's discovery motion as they have complied with their discovery obligations in all respects. In fact, with respect to ESI, Defendants have gone above and beyond, producing documents for fifteen custodians with more than ninety-one search terms. On or about September 10, 2013, Plaintiff and Defendants took part in an ESI protocol meet-and-confer, in which Plaintiff requested that Defendants use the predictive coding process for the ESI review. Defendants followed up on or about September 16, 2013 requesting that Plaintiff provide a list of proposed custodians, timeframes and search terms. On or about October 23, 2013, Plaintiff provided a list of **thirty-eight** custodians and proposed timeframes for the ESI review. Plaintiff did not provide any search terms. Thereafter, on or about November 13, 2013, Defendants provided their ESI counterproposal in which they agreed to search fifteen of the proposed custodians' mailboxes with a proposed list of broad and inclusive search terms.

On December 9, 2013, during the parties' meet-and-confer, Defendants informed Plaintiff of their belief that thirty-eight custodians was excessive and duplicative in this matter. Plaintiff did not engage in any discussion regarding search terms but rather insisted on an ESI protocol of predictive coding only. Defendants further requested that Plaintiff put in writing why he believed thirty-eight custodians were necessary in this matter, which he did so in a letter dated January 2, 2014. According to Defendants' November 13 Counterproposal, Defendants agreed to produce ESI for fifteen custodians – Plaintiff, four of Plaintiff's direct reports and ten Deutsche Bank employees and members of senior management to whom Plaintiff allegedly reported wrongdoing. As discussed with Plaintiff during the December 9 meet-and-confer, Plaintiff's request for the review of twenty-two additional custodians is, in many cases, duplicative and overbroad, especially where the issue here is the reason for Mr. DeDilectis's termination – not the underlying operations systems issues.

Defendants ran the search terms they proposed for the fifteen ESI custodians which resulted in the initial production of more than 31,000 pages of documents. In producing this ESI, Defendants noted, "[i]f, after reviewing the production, you still feel additional searches are warranted, Defendants are amenable to further discussion. Given our [then] limited window for completing discovery, however, document production could not be delayed."

On or about April 1, 2014, Plaintiff provided another ESI proposal. This proposal removed eleven custodians from Plaintiff's prior request, but still requested searches of **twenty-seven** custodians. Moreover, the proposed timeframes and search terms for the additional custodians appear to have nothing to do with Mr. DeDilectis's claim that he was terminated based on retaliatory animus. Under the circumstances, Defendants believe their search of fifteen custodians was more than generous given all claims and defenses raised, and that no further searches are necessary.

Defendants anticipate moving for summary judgment following the close of discovery.





(iii) Pending motions

There are no motions currently pending.

(iv) Other applications that are expected to be made at the status conference

The parties intend to set a new discovery schedule at the status conference, as the current discovery deadline of May 5, 2014 has passed.

**4. BRIEF DESCRIPTION OF DISCOVERY:**

(i) Discovery that has already taken place

To date, both parties have served one set of requests for the production of documents. Defendants have produced more than 31,000 pages of documents and Plaintiff has produced approximately 1,000 pages of documents. Both parties also have served Initial Disclosures Pursuant to Fed. R. Civ. P. 26(a) and served and responded to Interrogatories.

(ii) Discovery that the parties intend to take in the future

The parties plan to commence depositions within the next three months, following document discovery.

**5. STATEMENT OF PROCEDURAL POSTURE AND UPCOMING DEADLINES:**

As stated above, the parties need to discuss a new schedule for discovery at the upcoming conference. Currently, this matter is in the midst of written discovery and document production, and discussions regarding Plaintiff's request for the production of additional ESI have stalled, requiring Court intervention.

**6. STATEMENT DESCRIBING STATUS OF SETTLEMENT DISCUSSIONS AND WHETHER PARTIES WOULD LIKE A SETTLEMENT CONFERENCE:**

The parties have not been able to engage in any meaningful settlement discussions. While the parties do not seek a settlement conference in this matter, they leave it open to the Court to make suggestions regarding a possible resolution. In order to engage in more meaningful discussions, more written discovery, document production and depositions are needed.

**7. ANY OTHER INFORMATION:**

The parties have no further information they would like to share with the Court at this time.

Please do not hesitate to contact us should the Court have any questions.

Respectfully Submitted,

Lawrence M. Pearson

cc: Kenneth Turnbull, Esq. (via ECF)
Andriette A. Roberts, Esq. (via ECF)